## A14A1352. JACKSON v. THE STATE.
(764 SE2d 569)

BRANCH, Judge.

James Gower Jackson was tried by a Clayton County jury and found guilty on two counts of criminal damage to property in the second degree[1] and one count of simple assault.[2] He now appeals from the denial of his motion for a new trial, arguing that the trial court erred when it refused to instruct the jury on the defense of justification. We find no error and affirm.

"On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict." *Marriott v. State,* 320 Ga. App. 58 (739 SE2d 68) (2013) (citation omitted). So viewed, the record shows that Jackson was previously employed as a truck driver for Super Service Trucking. On October 27, 2011, while driving a trailer of freight to Tennessee, Jackson used the Qualcomm system[3] located in the cab of the Super Service truck he was driving to send a message to Bruce Ellington, Super Service's director of operations. Jackson told Ellington that he was going to bring Ellington his "god damn truck" because he was "tired of delivering [Super Service's] freight for nothing"; he concluded the message by writing "[w]hatever happens now just remember you drove me to it." Ellington replied to the message, telling Jackson that he accepted Jackson's resignation. After receiving Ellington's reply, and assuming that he had been fired, Jackson dropped the trailer loaded with freight at a truck stop off of I-75 in north Georgia, near the Tennessee line. Jackson then drove the truck cab to the Super Service facility in Ellenwood, Georgia.

Vehicles enter the Super Service facility at Ellenwood through a parking lot. Trucks entering the lot are then supposed to drive to a guard shack located at an interior gate, check in with the guard, and then drive around the building to the back entrance. When he returned with the truck cab, however, Jackson neither stopped at the

---

[1] OCGA § 16-7-23 (a) (1).

[2] OCGA § 16-5-20 (a) (2).

[3] Qualcomm is a computerized system that allows drivers to exchange messages with people at the Super Service offices.

guard gate nor attempted to drive to the back of the building. Instead, he drove past the guard shack and through the interior gate, made a sharp left turn, and ran into two SUVs parked near the building. One of the SUVs belonged to Ellington and the other belonged to Danny Bryan, the Super Service terminal manager. Jackson then exited the truck cab carrying his tire bat, which was described as a long wooden object that resembles a billy club. Carrying the tire bat, Jackson walked into Ellington's office and told Ellington he was "going to whoop somebody's ass." Jackson also told Ellington that he had "hit a couple of cars in the parking lot." After observing the damaged cars and truck cab from his office window, Ellington called the police while another Super Service employee walked Jackson out of the building. Following an investigation at the scene, the responding officer arrested Jackson.

Jackson testified in his own defense and stated that as he pulled into the Super Service parking lot, the truck's throttle became stuck. He then accidentally hit the accelerator instead of the brake, and he indicated that the accelerator got stuck. At that point, Jackson decided to steer the truck into the parked cars to avoid hitting either the guard or two Super Service employees who were sitting at a nearby picnic table. Jackson further explained that he confronted Ellington while carrying a tire bat because he was afraid Ellington would be angry about the damage to his car.

During the charge conference, Jackson requested charges on the affirmative defenses of justification and accident. The trial court agreed that the charge on accident was supported by the evidence, but declined to give the charge on justification, finding that Jackson's testimony showed that the damage to the cars was accidental. As the court explained its reasoning, "what [Jackson's] saying here is the truck malfunctioned. [He] had an accident and [he] ran into their cars instead of running into people. I think that's all covered by accident." Jackson excepted to the jury charge and on appeal he contends that the trial court's refusal to give his requested charge on justification constitutes reversible error.

A defendant is entitled to a requested jury charge on an affirmative defense as long as there is at least some evidence, including the defendant's own testimony, to support it. *Price v. State*, 289 Ga. 459, 459-460 (2) (712 SE2d 828) (2011). Whether the evidence presented supports a particular affirmative defense is a question of law, *Lewis v. State*, 292 Ga. App. 257, 264 (2) (663 SE2d 721) (2008), and the trial court's ruling on this issue is therefore subject to de novo review. *Burdett v. State*, 285 Ga. App. 571 (646 SE2d 748) (2007).

When a defendant claims justification, he admits that he intended to engage in the conduct which constitutes the crime but argues that

under the circumstances he was justified in so acting and that he therefore lacked the requisite criminal intent.[4] *Brower v. State*, 298 Ga. App. 699, 702 (1) (680 SE2d 859) (2009) (the defense of justification requires that a defendant admit all elements of the crime except intent). See also *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991) (defendant was entitled to a jury instruction on justification where he admitted driving without a valid license, but argued that he was justified in doing so because his pregnant wife was experiencing labor pains and was unable to drive, and the doctor had instructed her to come to his office); *Moore v. State*, 234 Ga. App. 332, 333 (1) (506 SE2d 685) (1998) (on charge of interference with government property, defendant was entitled to a charge on justification where he admitted kicking out the window in a police car, and the evidence showed that he was in respiratory distress resulting from an allergic reaction to pepper spray and needed air).

Unlike justification, the defense of accident is premised on the defendant's assertion that he did not intend to commit the act which constitutes the crime.[5] See *State v. Ogilvie*, 292 Ga. 6, 9 (2) (b) (734 SE2d 50) (2012) (in cases involving strict liability traffic offenses, the defense of accident "must be based . . . on evidence that the prohibited act was committed involuntarily, for example, because of an unforeseeable physical ailment or external force") (citations omitted); *McBurnette v. State*, 236 Ga. App. 398, 399 (512 SE2d 298) (1999) (defendant entitled to jury charge on accident where he testified that he did not deliberately strike victim but that victim was struck inadvertently by defendant's elbow as defendant turned in an attempt to keep the defendant from striking him); *Sapp v. State*, 179 Ga. App. 614, 615 (2) (347 SE2d 354) (1986) (in a prosecution for obstructing a police officer, the defendant's testimony that her conduct in obstructing the officer resulted from a fall caused by illness required a jury charge on accident). Additionally, a defendant claiming accident must also show that the allegedly unintentional act did not occur while he was engaged in a "criminal scheme or undertaking" and that he was not

---

[4] Under Georgia law, a criminal defendant may prove that his conduct was justified because it occurred in defense of himself, his home or his property, or in defense of other persons; resulted from entrapment or coercion; occurred in reasonable fulfillment of his duties as a government officer or employee; constituted the reasonable discipline of a minor by his parent or a person in loco parentis; was both reasonable and performed in the course of making a lawful arrest; or was "justified for any other reason under the laws of [Georgia]." OCGA § 16-3-20 (1)-(5). A defendant may also assert justification "[i]n all other instances which stand upon the same footing of reason and justice as" any of the foregoing grounds. OCGA § 16-3-20 (6).

[5] The defense of accident is set forth in OCGA § 16-2-2, which provides: "A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence."

criminally negligent, i.e., that his conduct "did not show an utter disregard for the safety of others who might reasonably be expected to be injured thereby." *Lee v. State*, 320 Ga. App. 573, 578-579 (2) (740 SE2d 307) (2013) (where defendant hit victims' car while fleeing from police at a high rate of speed, he was not entitled to a jury instruction on accident) (citation and punctuation omitted).

Given that a defendant claiming justification admits intentionally engaging in the charged conduct while a defendant claiming accident does not, the two defenses are usually considered mutually exclusive and as a general rule will not be charged in the same case. *Hill v. State*, 300 Ga. App. 210, 212 (1) (684 SE2d 356) (2009); *Lewis*, 292 Ga. App. at 264 (2); *Payne v. State*, 273 Ga. App. 483, 487 (7) (615 SE2d 564) (2005). The cases in which Georgia's appellate courts have found that a defendant is entitled to a jury instruction on both justification and accident are those in which some evidence shows that the defendant was armed with a weapon while defending himself from another party and the other party was wounded or killed accidentally by that weapon. See *Hudson v. State*, 284 Ga. 595, 597 (4) (669 SE2d 94) (2008) (evidence supported a jury charge on both accident and justification where defendant testified that she brandished knife at the victim after he threatened her, that she did not intend to stab him, and that she could not recall how the knife wound up in the victim); *Koritta v. State*, 263 Ga. 703, 704 (438 SE2d 68) (1994) (a trial court should charge the jury on both accident and justification "where one who is armed with a weapon claims it accidentally discharged while he was defending himself from another party") (citation omitted); *Turner v. State*, 262 Ga. 359, 360-361 (2) (b) (418 SE2d 52) (1992) (same). Under those particular circumstances, a jury could find that the defendant acted intentionally in using his weapon, but that his conduct was justified by self-defense. Alternatively, the jury could find that the use of the defendant's weapon was unintentional, in which case the defense of accident would apply. See *Hill*, 300 Ga. App. at 212-213 (1) (where evidence shows that defendant had armed himself for purposes of self-defense and that the victim was injured accidentally, the defendant was not required to choose between the defenses of accident and justification "but [was] entitled to have the jury, under proper instruction, to determine which, if either, of the defenses is applicable") (citations omitted).

In this case, Jackson argues that he was entitled to a jury instruction on both accident and justification because although he claimed that the entire incident resulted from a malfunctioning truck, he also testified that he deliberately chose to strike the parked cars to avoid striking people. Although that testimony explains why Jackson made a sharp turn into the parked cars, Jackson's defense

was that the truck's throttle and/or accelerator stuck, that he was unable to stop the truck, and that he elected to steer the truck toward fixed objects and away from the Super Service employees present in the parking lot. According to Jackson, therefore, his crashing of the truck was the unintentional result of unforeseen circumstances over which he had no control. Thus, under his version of the events, the damage to the parked cars resulted from an unavoidable accident. Moreover, Jackson's testimony as to the reasons for his decision to steer the truck toward the parked cars served to support his accident defense. If believed by the jury, that testimony would have shown when he decided to hit the cars Jackson "was acting with regard for the safety of others, i.e., without criminal negligence." *Davis v. State*, 269 Ga. 276, 280 (3) (496 SE2d 699) (1998) (citations omitted).

Additionally, Jackson's position that the damage to the property was the result of a malfunctioning truck is inconsistent with a justification defense. As discussed supra, such a defense requires that a defendant admit to otherwise criminal conduct. Here, however, Jackson claimed his conduct was the result of an accident, and he therefore has not admitted that the conduct was otherwise criminal.

Given Jackson's theory of defense and the evidence presented at trial, we find no error in the trial court's refusal to give Jackson's requested jury charge on justification. See *London v. State*, 289 Ga. App. 17, 19 (1) (656 SE2d 180) (2007).

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur.*

DECIDED OCTOBER 7, 2014.

*Tyler R. Conklin, James C. Bonner, Jr.*, for appellant.
*Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Deah B. Warren, Assistant District Attorneys*, for appellee.

A14A1353. CHRISTIAN v. THE STATE.
(764 SE2d 573)

DILLARD, Judge.

Following a bench trial, Billy Wayne Christian was convicted in probate court of driving under the influence and violating conditions of limited driving. He appealed to the superior court, and his convictions were affirmed. Now, on appeal to this Court, Christian contends that the probate court erred in denying his motion to suppress the State's evidence and in admitting Georgia Crime Information Center

("GCIC") printouts when the State failed to lay a proper foundation for same. For the reasons noted infra, we affirm in part and reverse in part.

Viewed in the light most favorable to the guilty verdict,[1] the record reflects that at 8:26 a.m. on July 27, 2010, a law-enforcement officer with the Whitfield County Sheriff's Office observed Christian's pickup truck "gripping" the pavement while making a distinct scratching sound. The officer also noticed that the truck bore a Tennessee license plate, which, in light of the erratic driving, further raised his suspicions about the vehicle being in this particular subdivision that early in the morning. Accordingly, the officer relayed the tag information to dispatch and was informed that the tag returned as "not on file." The officer then stopped the truck to investigate further.

Immediately upon approaching the vehicle, the officer detected the odor of an alcoholic beverage and asked Christian to exit the truck to perform field-sobriety tests. During the investigation that ensued, the officer also learned from dispatch that Christian's license was subject to certain travel restrictions, which he violated because he was driving to a store. Thereafter, Christian exhibited clues of impairment on each field-sobriety test administered, and then returned levels of 0.137 and 0.139, respectively, on two Intoxilyzer 5000 tests. Christian was later tried and convicted of the above-referenced offenses. This appeal follows.

1. First, Christian contends that the trial court erred in denying his motion to suppress the State's evidence when the officer lacked a reasonable and articulable suspicion to stop his vehicle. We disagree.

To begin with, in considering a trial court's denial of a motion to suppress, this Court construes the evidence in favor of the court's ruling, "and we review de novo the trial court's application of the law to undisputed facts."[2] Furthermore, we must defer to the trial court's "determination on the credibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous."[3] And in reviewing the denial of a motion to suppress, we consider "all the evidence of record, including evidence introduced at trial."[4]

Additionally, we bear in mind that stopping and detaining a driver to check his license and registration is appropriate when an

---

[1] See, e.g., Muse v. State, 323 Ga. App. 779, 780 (748 SE2d 136) (2013).

[2] Reid v. State, 321 Ga. App. 653, 653 (742 SE2d 166) (2013) (punctuation omitted); accord Lindsey v. State, 287 Ga. App. 412, 412 (651 SE2d 531) (2007).

[3] Reid, 321 Ga. App. at 653 (punctuation omitted); accord Lindsey, 287 Ga. App. at 412.

[4] Reid, 321 Ga. App. at 653 (punctuation omitted); accord Lindsey, 287 Ga. App. at 412.

officer has a reasonable and articulable suspicion that "the driver or vehicle is subject to seizure for violation of the law."[5] In this respect, we have held that a reasonable and articulable suspicion must be "an objective manifestation that the person stopped is, or is about to be, engaged in criminal activity, and that this determination can only be made after considering the totality of the circumstances."[6]

Here, the officer who stopped Christian did so after dispatch relayed that his Tennessee tag number returned as "not on file." And after doing so, the officer investigated Christian's registration of the vehicle and the legality of the tag because, according to the officer's testimony, a return of "not on file" means that the tag has not been registered. Indeed, it is a misdemeanor to "operate any vehicle required to be registered in the State of Georgia without a valid numbered license plate properly validated, unless such operation is otherwise permitted . . . ,"[7] and this registration requirement applies to *nonresidents* and *out-of-state visitors* as well.[8] Accordingly, the officer had a reasonable and articulable suspicion justifying his stop of Christian, and the trial court did not err in denying Christian's motion to suppress.[9]

---

[5] *Hernandez-Lopez v. State*, 319 Ga. App. 662, 663 (1) (738 SE2d 116) (2013) (punctuation omitted); *see also Delaware v. Prouse*, 440 U. S. 648, 663 (VII) (99 SCt 1391, 59 LE2d 660) (1979) ("[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.").

[6] *Hernandez-Lopez*, 319 Ga. App. at 663-64 (1) (punctuation omitted); *accord Humphreys v. State*, 304 Ga. App. 365, 366 (696 SE2d 400) (2010).

[7] OCGA § 40-2-8 (b) (2) (A).

[8] *See* OCGA § 40-2-90 (b) (3) ("To be eligible for the exemptions provided for in paragraph (1) or (2) of this subsection, a nonresident or visitor shall have fully complied with the laws relating to the registration of motor vehicles of the state or territory wherein he resides, and the registration number and initial letter of such state or territory shall be displayed and plainly visible on such motor vehicles.").

[9] *See Jordan v. State*, 223 Ga. App. 176, 178 (1) (477 SE2d 583) (1996) (holding that stop of defendant was justified when officer did so to investigate the operation of a motor vehicle with an expired license tag); *see also United States v. Santana-Gomez*, Case No. CR-12-175-M, 2012 WL 3946268, at *2 (II) (A) (W.D. Okla. 2012) (holding that officer had a reasonable and articulable suspicion to stop defendant when registration check on vehicle tag returned as "not on file" and officer suspected that the vehicle might not be registered); *United States v. Lee-Speight*, Case No. 10-40035-01-SAC, 2010 WL 2653412, at *6 (D. Kan. June 29, 2010) (same); *United States v. Franklin*, Case No. 09-40042-JAR, 2009 WL 3335602, at *4-5 (II) (A) (D. Kan. Oct. 15, 2009) (same); *State v. Kramer*, Case No. 104,578, 2011 WL 768034, at *3 (Kan. Ct. App. 2011) (same); *cf. State v. Dixson*, 280 Ga. App. 260, 262-63 (633 SE2d 636) (2006) (holding that officer lacked a reasonable and articulable suspicion to justify stop from a database return of "unknown" insurance status when officer "did not testify that an 'unknown' status likely meant that [the defendant's] car was uninsured" or "testify about any prior experience or training he had with such a response from an NCIC search or why the database might produce such a response").

Christian also argues that the trial court erred in permitting the officer to testify as to what dispatch told him regarding the tag's return as "not on file," contending that this testimony was hearsay. However, as the trial court properly determined, this testimony was used not to prove the truth of the matter asserted, but was instead proffered to explain the officer's conduct in deciding to stop the truck and initiate an investigation.[10] Accordingly, this enumeration of error is likewise without merit.

2. Next, Christian argues that the trial court erred by permitting the State to introduce into evidence GCIC printouts without first laying the proper foundation. We agree.

Former OCGA § 24-3-17 provides that any court may

> receive and use as evidence in any case information otherwise admissible from the records of the Department of Public Safety or the Department of Driver Services obtained from any terminal lawfully connected to the Georgia Crime Information Center without the need for additional certification of those records.[11]

Thus, we have held that, pursuant to the plain terms of the statute, the State presents a sufficient foundation for the admission of GCIC printouts when it shows that the document was "obtained from a computer terminal lawfully connected to the GCIC."[12] And we have further held that the State accomplishes this when a witness testifies to *personally* obtaining the printouts from a GCIC terminal[13] or

---

[10] *See Stallings v. State*, 319 Ga. App. 587, 589 (2) (a) (737 SE2d 592) (2013) ("The record shows that the dispatch description of the vehicle was admitted for the limited purpose of explaining the officer's conduct in responding to the dispatch call and investigating Stallings's vehicle. As such, the admission of the dispatch description was not erroneous."); *see also Herieia v. State*, 297 Ga. App. 872, 875 (2) (678 SE2d 548) (2009) (holding that officer's testimony regarding information he received from dispatch was properly admitted, not to establish the truth of the matter asserted, but to explain his conduct in investigating the defendant).

[11] Former OCGA § 24-3-17 (b) (2011). We note that Christian was tried in 2011, making the former Evidence Code applicable. *See* Ga. L. 2011, p. 99, § 101 (providing that Georgia's new Evidence Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013). However, the relevant provision of former OCGA § 24-3-17 (b) has been recodified in the new Evidence Code at OCGA § 24-9-924 (a).

[12] *Thomas v. State*, 196 Ga. App. 88, 91 (4) (395 SE2d 615) (1990).

[13] *See Fannin v. State*, 267 Ga. App. 413, 414 (1) (599 SE2d 355) (2004) (holding that State established the necessary foundation for admission when an officer "testified that he was certified to run driving histories and that he obtained a printout of [the defendant's] driving history from an approved computer terminal at the Department of Public Safety"); *Smith v. State*, 247 Ga. App. 516, 517 (1) (544 SE2d 208) (2001) (holding that State established the necessary foundation for admission when "a certified GCIC operator testified that she obtained the computer printouts from a GCIC terminal"); *see also Worthy v. State*, 252 Ga. App. 852, 853 (1) (557 SE2d 448) (2001) (holding that State presented at least circumstantial evidence that

identifies the printouts as having been obtained from a specific GCIC terminal,[14] but not when a witness merely testifies to obtaining a printout from some other source[15] or when the State only *argues* that a printout was obtained from a lawfully connected terminal.[16]

Here, an employee of the probate court clerk's office testified that she was *not* authorized to access the GCIC computer but that she had experience reading GCIC printouts and criminal histories. When presented with the State's exhibit, which purported to be a GCIC printout on Christian, the employee testified that it was a GCIC printout "that was obtained in our office" and that two individuals employed in the clerk's office were certified to access the GCIC computer.[17] She further testified that the office had four terminals that could access the GCIC database; that, as far as she knew, all were properly connected; and that only certified clerks were authorized to access the GCIC database in the office. Additionally, she testified that each certified operator had a unique operator number but that, because she was not a certified operator, she did not know the

---

GCIC terminal was lawfully connected when it "offered evidence that . . . an investigator with the solicitor's office[ ] was trained and authorized to access the driving record and that she retrieved the information through a computer connected to the GCIC").

[14] *See Jackson v. State*, 228 Ga. App. 877, 878 (1) (492 SE2d 897) (1997) (holding that State established the necessary foundation for admission when a certified GCIC coordinator "identified State's Exhibit 1 via the 'origination agency identity number' " and the Fulton County Solicitor's number, before further testifying that the Fulton County Solicitor's computer terminal is "connected to the GBI ([Georgia Bureau of Investigation]), Panthersville" and confirming that the exhibit was a "GCIC, criminal history, driver's history" (punctuation omitted)); *see also Thomas*, 196 Ga. App. at 91 (4) ("Testimony showed that the document in question here was obtained from an Athens police department terminal lawfully connected to the GCIC computer. Pursuant to the statute, nothing more is required.").

[15] *See Tolbert v. State*, 227 Ga. App. 647, 647 (490 SE2d 183) (1997) (holding that State failed to lay the necessary foundation for admission when "an employee of the Coweta County Solicitor's Office testified that she had physically obtained a copy of [the defendant's] driving history from the State Patrol office"); *see also Mordica v. State of Ga.*, 319 Ga. App. 149, 155-56 (4) (736 SE2d 153) (2012) (physical precedent only) (holding that appellant had not properly preserved objection for appellate review but noting that, although State presented testimony that an officer used the GCIC database to determine that appellant had a history of drug convictions, the State "never elicited testimony from [the officer] that he had, in fact, pulled the GCIC report" from a terminal lawfully connected to the GCIC before the State admitted the report as evidence).

[16] *See Tipton v. State*, 213 Ga. App. 764, 765 (2) (445 SE2d 860) (1994) ("Although the record in this case seemingly was obtained from . . . a computer [lawfully connected to GCIC], no witness testified that it was so obtained. Instead, the prosecutor merely represented in argument that the record was obtained from such a computer. This is not evidence, and thus, we find the prosecutor also did not lay an adequate foundation for introduction of the driver's record." (punctuation omitted)); *accord Waters v. State*, 210 Ga. App. 305, 306-07 (1) (436 SE2d 44) (1993).

[17] Given the late hour of the trial, the two individuals certified to access GCIC reports had since gone home at the time the State presented the court employee's testimony, and the State had not subpoenaed either of the certified individuals, notwithstanding Christian's repeated objections.

identification numbers for those individuals in the office. Finally, reading the printout, the employee testified that as of the date of Christian's arrest, his driver's license was suspended.

The testimony by the probate-court employee as to the status of Christian's license at the time of his arrest was the *only* evidence the State presented that Christian was driving in violation of OCGA § 40-5-64, which makes it a crime to operate a motor vehicle in violation of the conditions of a limited driving permit.[19] Accordingly, because the State failed to lay the proper foundation, this evidence was inadmissible hearsay, and the evidence was insufficient to support Christian's conviction for this offense.[20]

As such, for all the foregoing reasons, we affirm Christian's DUI conviction and reverse his conviction for violating conditions of limited driving.

*Judgment affirmed in part and reversed in part. Doyle, P. J., and Miller, J., concur.*

DECIDED OCTOBER 7, 2014.

---

*Herbert M. Poston, Jr., District Attorney, McCamy, Phillips, Tuggle & Fordham, Curtis A. Kleem*, for appellee.